IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MARYLAND
(SOUTHERN DIVISION)


JOSE MARQUEZ, *et al*.                    *

           Plaintiffs,              *

         v.                            *        Case No. 8:21-cv-01775-AAQ

INDIA BAZAAR, INC*., et al.*              *

           Defendants              *

### MEMORANDUM OPINION AND ORDER

This is a dispute over unpaid overtime wages and alleged retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and Maryland state law.  Pending before the Court is a Joint Motion and Memorandum for Approval of Settlement of said dispute between the parties pursuant to 29 U.S.C. § 216.  For the reasons discussed below, the Joint Motion shall be GRANTED, and the case will be DISMISSED.

### BACKGROUND

Plaintiffs Jose Marquez, Juan Marquez, and Lazaro Zelaya (collectively, "Plaintiffs") are former employees of India Bazaar, Inc. ("IBINC"), which operates a grocery store in Gaithersburg, Maryland under the name "India Bazaar."  ECF No. 27-1, at 1.  Plaintiffs were each employed by IBINC for periods ranging from four to nine years.  *Id*. at 2.  While Plaintiffs allege that they were also employed by Jasbir Singh, the owner of IBINC, the parties dispute the specific nature of their employment.  *Id*.  Plaintiffs allege that they worked as grocery stockers for IBINC and were not paid at the proper minimum wage or for certain hours of overtime worked.  *See id*.  ("[Plaintiffs] contend that Jose Marquez was paid $3,400-$4,000 per month; Juan Marquez was paid $1,100-

$1,800 per month; and Zelaya was paid $1,900-$2,500 per month . . . They also contend that they worked approximately sixty to sixty-three hours per week for at least fifty weeks per year."). Defendants dispute these claims, alleging that Plaintiffs were paid in conformity with minimum and overtime wage requirements.  *Id*. at 3.

The parties have engaged in considerable written discovery and Plaintiffs conducted a deposition of Mr. Singh.  *Id*. at 4.  Written discovery included the production of punch-in and punch-out records, records of payment, and "hundreds of pages of text messages exchanged between Singh and Jose Marquez," as well as other documents.  *Id*.  The parties also exchanged detailed calculations of unpaid wages based on the documents shared and independent testimony. *Id*.  After this exchange, the parties reached a settlement.  *Id*.  The total settlement distributes $115,500.00 as follows: Jose Marquez will receive $14,000.00, Juan Marquez will receive $30,000.00, Lazaro Zelaya will receive $59,000.00, and Plaintiffs' counsel will receive $12,500.00 in fees and costs.  *Id*.  ECF 27-2, at 2.  After reaching that agreement, counsel for the parties filed the present Joint Motion.  ECF No. 27.

## STANDARD OF REVIEW

When evaluating settlement agreements for approval under the FLSA, courts should approve settlements that "reflect[] a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 2949047, at *2 (D. Md. Jun. 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).  In making such a determination, typically, district courts in the Fourth Circuit "employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*."  *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748

F.Supp.2d 471, 478 (D. Md. 2010)).  Those considerations include ensuring there is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions" by evaluating the following: (1) whether there are FLSA issues actually in dispute; (2) whether the settlement is fair and reasonable in light of the relevant factors; and (3) whether the attorneys' fees, if included in the agreement, are reasonable.  *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at \*10 (E.D. Va. Sep. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at \*2-3 (D. Md. Aug. 31, 2011)). Evaluation of the aforementioned, with discussion of the relevant facts, follows below.

### DISCUSSION

The parties have asked the Court to approve their proposed Settlement Agreement and dismiss this case.  I find that approval is proper as the settlement agreement reflects a fair and reasonable resolution of a *bona fide* dispute between the parties and includes a reasonable award of attorneys' fees.

### A.  There is a *Bona Fide* Dispute Between the Parties.

To determine whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, the Court should "examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey v. Scotts Co. LLC*, 30 F.Supp.3d 404, 408 (D. Md. 2014) (citing *Lomascolo*, 2009 WL 3094955, at \*16-17).  Disagreements over rates of pay and hours worked can constitute *bona fide* disputes over a defendant's liability.  *See id.* (finding a *bona fide* dispute where "parties disagree[d] about Duprey's rate of pay and hours worked").  Disagreements over whether an individual employed another are also *bona fide*.  *See id.* ("As a preliminary matter, Scotts rejects Duprey's claim that it was his 'employer' for the purposes of 29 U.S.C. § 203(s)(1).").  Additionally, disagreement over an employee's

3

classification constitutes a *bona fide* dispute for FLSA claims.  *See Smith v. David's Loft Clinical Programs, Inc.*, No. 21-cv-03241-LKG, 2022 WL 16553228, at *4 (D. Md. Oct. 31, 2022) (finding a *bona fide* dispute where plaintiffs alleged that they were misclassified as exempt employees under the FLSA and defendants said they relied on legal advice in making their classification).

In their Joint Motion, the parties highlight the FLSA issues that constitute *bona fide* disputes.  Here, the parties dispute the amount of overtime Plaintiffs may be entitled to receive and whether their original compensation plan accounted for both regular and overtime rates, as well as whether Plaintiffs actually worked the full number of hours reflected in their schedule. ECF No. 27-1, at 7. Additionally, the parties dispute whether Plaintiff Jose Marquez was a manager and thus exempt from overtime requirements under FLSA.  *Id*. at 8.  Mr. Singh also disputes that he employed Plaintiffs. *Id*. at 9.  Since these are the types of disagreements that this Court has found exist under the FLSA in the past, I find that a *bona fide* dispute exists between the parties.

### B.  The Settlement Agreement is Fair and Reasonable.

Next, the Court considers whether a settlement agreement is fair and reasonable.  In assessing whether a settlement is fair and reasonable, the U.S. District Court for the District of Maryland applies the following six factors: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of settlement in relation to potential recovery." *Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

The first factor asks courts to consider the extent to which discovery has taken place.  When looking at this factor, courts assess whether the parties have "had adequate time to conduct

sufficient discovery to 'fairly evaluate the liability and financial aspects of [the] case." *Lomascolo*, 2009 WL 3094955, at *11 (citing *In re A.H. Robins Co., Inc.*, 88 B.R. 755, 760 (E.D. Va. 1988)). Here, the parties engaged in significant discovery, including all clock-in and clock-out records and all compensation records.  ECF No. 27-1, at 9.  Counsel for both parties had ample time to review these records and calculate damages to inform their settlement discussions.  *Id*.  Additionally, the parties both responded to interrogatories and began to conduct depositions.  *Id*. at 9.  In their Joint Motion, parties aver that they have "become very familiar with the merits of their respective cases" through this discovery.  *Id*. at 10.  Since the parties have had time to evaluate their positions in the context of this information, this factor weighs in favor of settlement.

The second factor looks to the current stage of the proceedings.  Settlements can be found to be fair where proceeding further would be difficult and costly and the parties would prefer to end proceedings before significant investment in litigation.  Here, the parties aver that "this is [a] fact-intensive case" which would likely require a trial, "further tax[ing] the resources of all parties, including the Plaintiffs, who would have to miss time from work to testify at depositions and trial, all without any guarantee of recovery."  *Id.* at 10.  *See Black v. Reviera Enter., Inc.,* No. DLB-19-201, 2020 WL 6544820, at *2 (D. Md. Nov. 6, 2020) (holding settlement agreement was fair and reasonable where parties recognized remaining discovery would require significant investment of time, effort, and financial resources); *Saman*, 2013 WL 2949047, at *4 (finding that the parties' representation that they wished "to avoid the costs of formal discovery, dispositive motions, and a possible trial" bolstered the decision to "engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed.").  Given the parties' joint preference to terminate proceedings early rather than invest further time and money into litigation, this factor weighs in favor of approving the settlement agreement.

The third factor assesses whether there has been fraud or collusion in the formation of the settlement.  There are no facts presented that suggest either, allowing the "presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12.  Here, counsel attests that settlement took place over a period of months, that positions shifted in light of discovery, and that "negotiations proceeded professionally, with vigor and at arms' length free of collusion."  ECF No. 27-1, at 10.  While "counsel's opinion and recommendation as to the fairness and reasonableness of a settlement is not to be blindly followed," *Saman*, 2013 WL 2949047, at *5 (citing *Lomascolo*, 2009 WL 3094955, at *12), their representations weigh in favor of approving the settlement.

Under the fourth factor, courts look to the experience of counsel.  Generally, where counsel is well-versed in the underlying law, courts presume that clients have been appropriately advised on the merits and challenges associated with settlement.  *See Hackett v. ADF Rest. Investments*, 259 F.Supp.3d 360, 366 (D. Md. 2016) (finding a fair and reasonable settlement where counsel had litigated numerous lawsuits involving wage and hour violations).  Here, all counsel are "experienced in representing clients in similar matters, have negotiated wage and hour settlements in dozens of cases, [and] have tried multiple FLSA or wage and hour cases to verdict."  ECF No. 27-1, at 10.  Plaintiffs' counsel, Mr. Theodore B. Godfrey, has almost thirty years of experience as a practicing lawyer.  *Id*. at 12.  Accordingly, I am satisfied that Plaintiff's counsel is sufficiently experienced in litigating similar matters.

The fifth factor incorporates the opinions of counsel.  Counsels' opinion that the expense and potential duration of litigation weighs in favor of early settlement lends credence to a proposed settlement agreement.  *Castro v. Early Learning Language Academies, LLC*, No. CBD-18-2421, 2021 WL 915106, at *4 (D. Md. Mar. 9, 2021**)**.  In their joint statement, the parties agree that the

settlement is fair and reasonable, and suggest the benefit of a settlement before incurring additional costs associated with continued litigation.  ECF No. 27-1, at 10.  This weighs in favor of approving the settlement.

Applying the sixth factor, courts weigh the probability of a plaintiff's success and the relationship between the amount of the settlement and the potential recovery.  As discussed above, Plaintiffs face multiple challenges before recovery at trial.  Counsel avers that the settlement compensates each Plaintiff with an amount close to or more than their base claims: Jose Marquez will receive $14,000.00 compared to his base claim of approximately $16,000.00; Juan Marquez will receive $30,000.00 compared to his base claim of approximately $13,500.00; and Lazaro Zelaya will receive $59,000.00 compared to his base claim of approximately $26,000.00.  *Id.* at 4-5.  *Cf. Gue v. Shree Pashuapati Corp.*, No. DKC-21-44, 2021 WL 2414866, at *2 (D. Md. Jun. 14, 2021) (approving settlement in which Plaintiff received, in total, 20% of claimed backpay); *Lee v. Ex-Exec Lube, LLC*, No. DLB-19-3195, 2021 WL 1117274, at *2 (D. Md. Mar. 24, 2021) (approving settlement in which Plaintiff received, in total, 14% of claimed backpay).  While Plaintiffs could possibly recover more at trial, the mere possibility of greater recovery does not render a settlement unfair.  *See Kuntze v. Josh Enterprises, Inc.*, No. 2:18cv38, 2019 WL 2179220, at *3 (E.D. Va. May 20, 2019) ("[T]here is also a possibility that Plaintiff is entitled to a lesser amount of damages or no damages at all.  Thus, the probability of full recovery is not so great as to outweigh the benefits of settlement in this case.").

Upon consideration of these factors, the Court finds the settlement to be fair and reasonable.

**C.  The Settlement Agreement Awards Reasonable Attorneys' Fees.**

The Settlement Agreement must also contain reasonable provisions for allocating attorneys' fees. *Duprey*, 30 F.Supp.3d at 411. Here, the parties have decided upon an allocation of $12,500.00 in attorneys' fees and costs. ECF No. 27-1, at 11.

"Ultimately, of course, any award of attorneys' fees to Plaintiff will turn on application of the traditional lodestar methodology factors." *Saman*, 2013 WL 2949047, at *6. The lodestar approach "multiplies 'the number of hours reasonable expended . . . by a reasonable hourly rate' to achieve 'an objective basis on which to make an initial estimate of the value of a lawyer's services.'" *Quevedo v. HBJ, Inc.*, No. PWG-14-734, 2014 WL 3970173, at *5 (D. Md. Aug. 13, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Under the lodestar approach, an hourly rate "is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey*, 30 F.Supp.3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n. 11 (1984)). In determining the reasonableness of the billing rates and hours worked to be used in a lodestar calculation, the United States Court of Appeals for the Fourth Circuit has directed courts to consider the following factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "Johnson factors"):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

8

*Saman*, 2013 WL 2949047, at *6 (citing *Barber v. Kimbrell's Inc.*, 557 F.2d 216, 226 n. 28 (4th Cir. 1978)).  This Court maintains guidelines regarding appropriate hourly rates in Appendix B to its Local Rules (D. Md. Jul. 2021).  The guidelines rate for lawyers admitted to the bar for more than twenty years is $300 per hour to $475 per hour.

In the Joint Motion, Plaintiff's counsel, Mr. Godfrey, attests that he conducted all of the legal work for Plaintiffs.  Mr. Godfrey states that the fees award reflects roughly thirty-five hours of his time billed at two rates: roughly thirty-one hours billed at $300.00 per hour, his regular hourly rate at Jezic & Moyse, and four hours billed at $425.00 per hour, his regular hourly rate at Zipin Amster & Greenberg. ECF No. 27-1, at 12.  This reflects a discount on actual services rendered, since Mr. Godfrey avers he spent more than fifty hours on this case.  *Id*.  Both rates are within the permissible guidelines for attorneys with Mr. Godfrey's experience.  Further, the number of hours billed appears reasonable given that this case involved multiple plaintiffs, extensive discovery, and settlement discussions over multiple months.[1]

The parties also request costs of $1,617.75 to compensate for process service, one deposition transcript, and filing fees.  While the Joint Motion does not detail the individual costs associated with each category, the numbers appear reasonable given the scope of the litigation.  Altogether, I find that the settlement agreement awards reasonable attorneys' fees and costs.

## CONCLUSION

---

[1] In prior cases, this Court has requested supplemental briefing when parties fail to provide specific information regarding the hours spent on the case, delineated by task, in accordance with Appendix B of the Court's Local Rules.  *See Brinkman v. Pete & Sons, Inc*., No. 8:22-cv-01460-AAQ, ECF No. 20 (D. Md. Apr. 25, 2023).  However, since the parties have averred as to the types of activities conducted and since the amount of fees requested is reasonable given the complexity of the case, I will not request additional information at this time.

For the reasons stated above, the Joint Motion for Judicial Approval of Settlement will be GRANTED and this case shall be DISMISSED with prejudice.

So ordered.

Date:   June 19, 2023                                      ___/s/_____
                                                          Ajmel A. Qureshi
                                                          United States Magistrate Judge